IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ADAM HASTINGS, LOUISE HASTINGS, and
MANITOBA PUBLIC INSURANCE CORPORATION,

                        Plaintiffs,                    OPINION and ORDER

    v.

                                                        22-cv-651-jdp

UNITED STATES OF AMERICA,

                        Defendant.

---

       This case arises from a 2019 car accident between plaintiff Adam Hastings and an employee of the United States Postal Service. Hastings and his insurer Manitoba Public Insurance Corporation brought this case under the Federal Tort Claims Act (FTCA) seeking damages for injuries that Hastings suffered from the accident.[1] Manitoba has already paid Hastings for medical expenses and lost wages under a personal injury protection plan, and it brings "a subrogation claim for wage and medical indemnity payments made to or for the benefit of Adams Hastings." Dkt. 17, ¶ 29.

       The United States moves for summary judgment on the claim by Manitoba. The United States contends that Manitoba waived its right to bring this claim when it settled a different subrogation claim for property damage from the 2019 accident. Manitoba entered an unambiguous settlement agreement with the United States in which it released all claims related to the 2019 accident, so the court will grant the United States' motion for partial summary judgment and dismiss Manitoba as a plaintiff.

---

[1] Plaintiffs' original complaint named two other defendants, Christele Hall and American Family Mutual Insurance Company, but they subsequently amended their complaint to dismiss these defendants, *see* Dkt. 20, leaving the United States as the sole defendant in the case.

UNDISPUTED FACTS

In November 2019, Adam Hastings was involved in a motor vehicle accident with an employee of the United States Postal Service. Manitoba Public Insurance Corporation provided commercial automobile insurance to Hastings's employer, and it also provided coverage for Hastings's personal injuries.

In July 2020, Manitoba filed an administrative claim with the Postal Service for the total loss of the truck, trailer, and cargo in the 2019 accident. Manitoba noted in the claim form that Hastings had sustained injuries in the crash but specified that it was only seeking property damage on behalf of Hastings's employer because Hastings had retained his own counsel to pursue damages for his injuries.

In April 2021, after several months of negotiations, the United States and Manitoba reached a settlement to resolve the property damage claim. During the negotiations, Manitoba told the Postal Service that "this claim is for property damage only to our customer's equipment and cargo as I understand our owner/operator has hired counsel in USA and has made a separate claim for injuries and uninsured losses." Dkt. 37-2, at 3. Prior to executing the settlement agreement and accepting payment for the track, trailer, and cargo loss, Manitoba's representative said, "I just need to confirm that by signing this property damage release for truck, trailer and cargo loss that this will still allow the owner/operator to continue on with his own claim" and asked if Hastings had contacted the Postal Service. Dkt. 37-2, at 1. The Postal Service representative responded, "I can confirm that the owner/operator can continue on with his own claim; I have not been contacted yet by the owner/operator." *Id.* Two days later, Manitoba executed the settlement agreement, which contained a broad release saying that Manitoba waived its right to bring any additional claims against the United States related to

the accident.

On June 8, 2021, the Postal Service mailed Manitoba a check with the settlement payment. The accompanying cover letter contained the following statement:

> Acceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the U.S. Postal Service, or any employee whose act or omission gave rise to the claim by reason of the same subject matter. Any subrogation claims, liens, or any outstanding indebtedness resulting from this incident, must be satisfied from the proceeds of this check.

Dkt. 30-3. Manitoba cashed the check without responding to the cover letter.

In November 2021, Manitoba filed another administrative claim with the Postal Service for injuries that Hastings sustained in the November 2019 accident. Manitoba specified on the claim form that it was submitting a subrogation claim for payments that it made to Hastings. The Postal Service denied the claim because Manitoba had already accepted the settlement check for the property damage claim and released "any and all claims arising from the same incident." Dkt. 30-5.

In November 2022, Manitoba and Hastings filed this suit, seeking to recover for Hastings's personal injuries.

ANALYSIS

The United States contends that Manitoba waived its right to bring the subrogation claim at issue in this complaint when it entered the April 2021 settlement agreement with the United States. The court agrees. The language of the settlement agreement is broad and unambiguous. The agreement binds "the undersigned claimant," which is identified in the signature block as "Manitoba Public Insurance," Dkt. 30-2, at 2, 5, and contains three

3

paragraphs that say the claimant releases future claims against the United States. The first paragraph of the agreement sets out the purpose of the agreement:

> The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the administrative claim, e.g., an incident that occurred on November 29, 2019 on Highway 29 in Wien, Wisconsin, under the terms and conditions set forth in this Settlement Agreement.

Dkt. 30-2, ¶ 1. Even though this paragraph incorrectly uses "e.g." where it should have used "i.e." to refer to the acts or omissions that gave rise to the administrative claim, the plain meaning of the paragraph is that the parties are agreeing to settle any claim that Manitoba has arising from the November 2019 accident.

The following two paragraphs specify each party's obligations and both describe the broad release granted by Manitoba:

> 2. The United States Postal Service agrees to pay the sum of One Hundred Twenty thousand, One Hundred Forty-Five and 62/100 United States Dollars ($120,145.62 USO), which sum shall be full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the subject matter of this settlement, including any claims for wrongful death, for which claimant or its guardians, heirs, executors, administrators, or assigns, and each of them, now have or may hereafter acquire against the United States of America, the United States Postal Service, its agents, servants, and employees.
>
> 3. Claimant and its guardians, heirs, executors, administrators or assigns hereby agree to accept the sums set forth in this Stipulation of Compromise Settlement in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including claims for wrongful death, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences

4

> thereof which they may have or hereafter acquire against the United States of America, United States Postal Service, its agents, servants and employees on account of the same subject matter that gave rise to the administrative claims, including any future claim or lawsuit of any kind or type whatsoever, whether known or unknown, and whether for compensatory or exemplary damages.

Dkt. 30-2, ¶¶ 2–3.

The key part of both paragraphs states that the claimant, Manitoba, releases all claims, including all known and unknown personal injury claims, arising from the "subject matter" of the administrative claim. The agreement would have been clearer if it had explicitly defined "subject matter." But a contract does not need to be a model of clarity to be unambiguous. *Niazi v. Merit Med. Sys., Inc.*, No. 22-CV-381-JDP, 2023 WL 4198675, at *4 (W.D. Wis. June 27, 2023). The first paragraph of the agreement identifies the November 2019 accident, and from that identification it is unambiguous that the "subject matter that gave rise to the administrative claims" is the November 2019 accident. Thus, by signing the agreement, Manitoba released all claims it had (or might acquire) against the United State related to the accident.

Manitoba contends that the settlement of its subrogation claim for Hastings's employer's damages has no impact on its claim for Hastings's damages because it stands in the shoes of its insured when making subrogation claims. It reasons that it could not have released Hastings's personal injury claim when settling Hastings's employer's claim because Hastings's employer had no authority to waive Hastings's claim. But this argument ignores that it was Manitoba who filed the administrative claim for property damages and settled that claim. Even though Manitoba relied on Hastings's employer's right to compensation to make the property

5

damage claim, it was Manitoba that signed the agreement, accepted payment, and waived its right to bring additional claims related to the 2019 accident.

Manitoba conflates its right to subrogation based on Hastings's damages with Hastings's right to his own claim against the United States. When it negotiated the settlement, Manitoba repeatedly confirmed that Hastings could still bring his own administrative claim. But Manitoba never asked whether it could bring a second subrogation claim for payments it made to or for the benefit of Hastings. Manitoba apparently assumed that it could file a second administrative claim based on Hastings's personal injury damages because Hastings himself was free to do so. But Hastings' right to bring an FTCA claim does not give Manitoba the right to bring a new subrogation claim once it agreed to release all claims against the United States related to the 2019 accident. District courts routinely conclude that plaintiffs who accept settlement payments to resolve FTCA property damage claims release any other claims related to the same event, even if a plaintiff made a unilateral mistake and subjectively believed that the settlement did not affect his right to seek personal injury damages. *See, e.g., Ziler v. United States*, No. 21-cv-01697, 2022 WL 2390045, at *6 (W.D. La. July 1, 2022); *Penn v. United States*, No. 10-cv-1145, 2012 WL 3555302, at *1 (E.D. Ark. Aug. 16, 2012); *see also Laguer v. United States*, 257 F. Supp. 3d 198, 205 (D.P.R. 2017) ("the Court interprets section 2672 as barring a claimant who previously settled with a federal agency pursuant to the FTCA from bringing any subsequent claims, regardless of type, that arise out of the same underlying factual scenario").

Manitoba also challenges the enforcement of its settlement agreement based on two principles of contract law. Specifically, Manitoba contends that the settlement agreement is ambiguous because its title specifies that it was acting as subrogee of Hastings's employer. It

6

also contends that there was no meeting of the minds that it was releasing all future claims related to the 2019 accident based on the Third Circuit's decision in *Macy v. U.S.*, 557 F.2d 391 (3rd Cir. 1977). Both contentions are incorrect. As for ambiguity, Manitoba identifies flaws in the agreement that it contends make it subject to different interpretations. For instance, the language in the third paragraph that says "its guardians, heirs, executors, administrators or assigns" are bound by the release plainly does not apply to Manitoba, which doesn't have guardians, heirs, or executors. But the issues that Manitoba identifies do not alter the court's conclusion that the settlement agreement is unambiguous, despite some awkward drafting. Manitoba, not Hastings's employer, is identified as the party releasing all claims related to the accident that occurred in November 2019, and there is nothing within the four corners of the settlement agreement that could be construed as limiting the release to Manitoba's subrogation claim for property damage.

As for meeting of the minds, the written agreement that Manitoba signed distinguishes this case from *Macy*. In *Macy*, the government relied on the text of the FTCA to support its contention that the claimant released all future claims when she cashed a settlement check. The FTCA provides that "acceptance by the claimant of any such award, compromise, or settlement [under the FTCA] shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter." 28 U.S.C. § 2672. The parties in *Macy* had not entered into a written settlement agreement. Instead, when the claimant received a check with a cover letter saying that acceptance of the check would constitute a complete release of her claims, she responded with a letter saying that the amount did not cover her injuries and that she would inform the government of the extent

of her injuries and medical costs once she knew them. *Macy*, 557 F.2d at 393. The Third Circuit rejected the government's contention that the statutory release provision applied. It reasoned that the claimant did not accept an "award, compromise, or settlement" because the letter she sent in response to the government was a counteroffer, so the parties had not agreed to a settlement offer when she subsequently cashed the check. *Id.*, at 394.

Manitoba argues that its correspondence specifying that Hastings had separate personal injury claims shows that it did not intend to release those claims, putting it in the position of the plaintiff in *Macy*. But Manitoba did not object to the unambiguous broad release in the settlement agreement, which it signed after clarifying that Hastings would be able to bring his own claim. Manitoba signed an unambiguous settlement agreement that waived its right to bring subsequent claims against the United States, so *Macy* does not apply.

To be clear, Manitoba's settlement with the United States does not affect Hastings's FTCA claim. Hastings remains a plaintiff in this case seeking damages for injuries he suffered in the 2019 accident. But Manitoba gave up its ability to recover any other damages directly from the United States when it signed the April 2021 settlement agreement, so it is not a proper plaintiff in this case.

8

ORDER

IT IS ORDERED that:

1. Defendant United States of America's motion for partial summary judgment on plaintiff Manitoba Public Insurance Corporation's claim, Dkt. 27, is GRANTED.

2. Plaintiff Manitoba Public Insurance Corporation's claim is DISMISSED with prejudice.

3. Plaintiff Manitoba Public Insurance Corporation is DISMISSED.

Entered April 19, 2024.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        JAMES D. PETERSON
                                        District Judge